**FLYNN ex rel. CHIN KING v. TILLING-HAST, Commissioner of Immigration.**

District Court, D. Massachusetts. April 29, 1929.

No. 4038.

Everett F. Damon, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and John W. Schenck, Asst. U. S. Atty., both of Boston, Mass., for defendant.

MORTON, District Judge. ■ The only question is whether the applicant is the son of Chin Wing, a native-born American citizen. His claim is that he was born in China in 1916. Wing mentioned such a son when he returned to this country in 1917, again in 1922 on pre-examination proceedings, and again in 1928 on his return to this country from another visit to China. In the present proceedings Wing gives the boy's birthday as August 13, 1916, while in 1917 he gave it as August 26, 1916. The immigration tribunals regarded this as a significant discrepancy; but I do not see that it can be fairly so considered. Mrs. Evans, an American woman, residing in Norfolk, Va., who for 30 years has done social service work among Chinese, testified that she was in Honk Kong on February 26, 1923, in company with one of her protégés, named Kwong; that they happened to meet Wing on the street there as they were leaving the United States consulate; that he had a small boy with him who appeared to be 6 or 7 years old; that knowing Wing, who had lived in Norfolk, she stopped and spoke to him, and he and Kwong had some talk. The incident is referred to in Mrs. Evans' diary which she produced. Kwong, who is a student at Richmond University, also testified to the incident and says that Wing at that time told him that the small boy was his son. Mr. Wilcox, who is apparently a lawyer of standing in Norfolk, vouches for the excellent reputation of both these witnesses. I can see no fair reason for rejecting their evidence. To do so seems to me in the highest degree arbitrary. Two other Chinese witnesses testified that they knew the applicant as Wing's son. They were not impeached, except that when returning to this country each had answered a stock omnibus question to the effect that he had not met in China any sons of residents of this country, nor taken any presents to persons in China. As Wing was then residing there, some question arises whether he came within the scope of the question. It seems a very slight and insufficient ground on which to adjudge testimony unreliable.

There has unquestionably been twelve years of consistent reference by Wing in official proceedings to a son corresponding in name and age with the applicant; and in 1923 in China a boy who might be the applicant was in company with Wing who said that the boy was his son. That Wing had a son corresponding in age and name with the applicant is too clear for fair denial. The only possible question is whether another boy is being substituted for that son. On this point there is in the applicant's favor his testimony and that of Wing and of the two Chinese witnesses. Kwong says in effect that the photo of the applicant, whom he has not seen, resembles the boy he saw in Hong Kong, but he cannot swear to the identity. It is a very strong case. The strength of it seems not to have been at all appreciated by the immigration tribunals—at least, there is no suggestion of such appreciation in their decision.

On the other side the father's testimony about where his family were living has, on the record at least, been inconsistent and contradictory; and on a previous occasion he tried to introduce as his older son a boy who, as the immigration tribunals found, was not related to him. The applicant insists that the other boy is his brother. Wing now says that the other boy was his son, but that soon after birth the baby was turned over to another family to bring up in order to escape the bad luck brought on his own family by the death of an earlier child. The applicant is also rather hazy about where he lived at different times. He remembered one of the Chinese witnesses as having been at his house but not the other. The applicant is now 12 or 13 years, and he is testifying about incidents which occurred when he was 6 or 8 years old and younger. Few things are more uncertain than the recollection of a child. I do not think that perjury can reasonably be found upon the discrepancies here shown. All the suspicious facts—they are really nothing more—are to be viewed in connection with the extraordinarily strong testimony in the applicant's favor. It is not the function of the courts to balance evidence in these cases. But it is their duty to say whether a reasonable mind could regard direct affirmative evidence in a person's favor as outweighed by circumstances of mere suspicion. In this case the immigration tribunals seem to have allowed their prejudice against the father, because of what they regard as a previous attempt to deceive them, to blind them to the overwhelming evidence that Wing had a son corresponding to the applicant who was seen in Wing's company as late as February, 1923. With this fact established there remains only the question whether there were reasonable grounds on which to reject the evidence that the petitioner is that son. The petitioner, Wing, and the two Chinese witnesses, testify directly and positively that such is the fact. Kwong's testimony, while not amounting to direct evidence of identity, certainly goes far to establish it. Against this there is no direct evidence of substitution and there are no facts from which, in my opinion, such a conclusion can reasonably be reached. It is settled that Chinese witnesses are not to be disregarded and ignored simply because of their race. Kwock Jan Fat v. White, 253 U. S. 454, 464, 40 S. Ct. 566, 64 L. Ed. 1010.

It follows that the petitioner was not accorded a fair hearing before the immigration tribunals; and, neither party desiring to present further evidence, an order will be made discharging the petitioner from custody.